UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| GREENFUND MUSIC, | 04-CV-0333E(Sr) |
| I.M. NOBODY MUSIC, | |
| PIMP YUG, | |
| MY BLUE CAR MUSIC COMPANY, | |
| WB MUSIC CORP., | |
| ANTISIA MUSIC, INC., | MEMORANDUM |
| CHERRY LANE MUSIC PUBLISHING, | |
| EMI APRIL MUSIC, INC., | and |
| HUNGLIKEYORA MUSIC, | |
| WORLD OF DOLPHIN MUSIC, | ORDER[1] |
| UNIVERSAL-MCA MUSIC PUBLISHING, a Division | |
|   of Universal Studios, Inc., | |
| SIQUOMB PUBLISHING CORP. and | |
| SIMPLEVILLE MUSIC, | |

                    Plaintiffs,

      -vs-

PEMBROOK PINES ELMIRA, LTD. and
ROBERT J. PFUNTNER,

                    Defendants.

_____

        Plaintiffs — songwriters, music publishers and members of the American Society

of Composers, Authors and Publishers ("ASCAP")[2] — commenced this action on May

_____

        [1]This decision may be cited in whole or in any part.

        [2]ASCAP is a performing rights licensing organization to which, *inter alia*, songwriters and music
publishers grant a nonexclusive right to license non-dramatic public performances of their copyrighted
musical compositions.  On behalf of plaintiffs and its more than 180,000 members, ASCAP licenses the
right to publicly perform all of the songs in the ASCAP repertory to thousands of radio and television
stations, restaurants, nightclubs and other establishments whose owners desire lawfully to perform
copyrighted musical compositions in the ASCAP repertory.

3, 2004 alleging six causes of action for copyright infringement based on defendants' alleged public performances of six copyrighted musical compositions on May 2-3, 2003.[3] Plaintiffs are the owners of the copyrights of these six works and each has granted to ASCAP a non-exclusive license to authorize public performances of their copyrighted music; in a sense, plaintiffs were randomly selected and are representative of all of ASCAP's members.   Plaintiffs allege that their works have been broadcast without authorization over WLVY-FM, a radio station owned and operated by defendant Pembrook Pines Elmira, Ltd. ("Pembrook") and its president, defendant Robert J. Pfuntner.  Plaintiffs, pursuant to the Copyright Act of 1976, 17 U.S.C. §§502(a), 504(c) and 505, seek (1) an injunction permanently prohibiting defendant from publicly performing without the requisite licenses plaintiffs' copyrighted compositions, (2) statutory damages in the amount of $15,000 per infringement pursuant to 17 U.S.C. §504(c)(2) and (3) an award of costs and attorney's fees arising from this action. Defendant Pembrook was served with a Summons and Complaint via the New York Secretary of State on May 12, 2004 and defendant Pfuntner was served personally on May 18, 2004.   Defendants have failed to appear, answer or otherwise plead with respect to the Complaint in this action.  Thus, plaintiffs requested an Entry of Default, which was recorded by the Clerk of the Court on July 16, 2004.  On November 4, 2004

---

[3]The six compositions involved in this action are: "It's Been a While", "Just the Two of Us", "Drive", "Hey Baby", "Big Yellow Taxi" and "I Can Only Imagine".

plaintiffs filed a Motion for Entry of Default, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure ("FRCvP").  For the reasons set forth below, plaintiffs' Motion will be granted.

Under FRCvP 55, district courts may grant default judgment against a party that has failed to plead or otherwise defend.  *See Enron Oil Corp.* v. *Masonori Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  First, a party moving for default judgment must obtain an Entry of Default from the Clerk of the Court pursuant to FRCvP 55(a).  Second, if "the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain," the moving party can seek a default judgment from the Clerk of the Court; in all other situations, the plaintiff must seek a default judgment from the Court.  FRCvP 55(b).  Plaintiffs have obtained an Entry of Default from the Clerk of the Court and now seek default judgment from the Court pursuant to FRCvP 55(b)(2).

Where the moving party seeks default judgment from the district court, FRCvP 55(b)(2) governs and provides that "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper[.]"  This language indicates that judgment against a defaulting party should be granted only after careful examination of the

moving party's claim by the district court. *Enron Oil Corp.*, at 96. Indeed, "a defendant's default does not in itself warrant a court in entering a default judgment [because] [t]here must be a sufficient basis in the pleadings for the judgment entered." *Am. Centennial Ins. Co.* v. *Seguros La Republica, S.A.,* 1996 U.S. Dist. LEXIS 7729, at *57-58 (S.D.N.Y. 1996) (quoting *Nishimatsu Constr. Co., Ltd.* v. *Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also Ghartey* v. *Chrysler Credit Corp*., 1992 U.S. Dist. LEXIS 18185, at *11 (E.D.N.Y. 1992) (citing *Nishimatsu*).

The district court has discretion to ascertain whether sufficient grounds exist for granting default judgment. *Enron Oil Corp.*, at 95. In exercising this discretion, the district court may evaluate the underlying merits of the substantive claim and should resolve doubt in favor of the defaulting defendant. *Id.* at 96; *Wagstaff-el* v. *Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990). A district court may also consider, *inter alia*, the possibility of prejudice to the plaintiffs if default judgment is not granted, the sufficiency of the complaint, the possibility of disputed material facts, whether the defendant's default was due to neglect and the strong federal policy favoring decisions on the merits. *Ironworkers Local 6 Health Care Fund* v. *Stumm-Western Const., Corp.*, 1996 U.S. Dist. LEXIS 13624, at *3 (W..D.N.Y. 1996) (denying motion for default judgment to the extent that the record was insufficient to ascertain the amount of damages owed in ERISA action involving collective bargaining agreements).

Once a court concludes that a defendant is in default, the well-pleaded factual allegations against that defendant are taken as true except as to the amount of damages claimed. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). This does not mean that liability is established merely because of the default, as a defendant cannot be said to "admit" conclusions of law through default. *W.A.W. Van Limburg Stirum v. Whalen*, 1993 U.S. Dist. LEXIS 8898, at *8 (N.D.N.Y. June 29, 1993) (citation omitted). In other words, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ibid.* (quoting *Nishimatsu*, at 1206 (finding the plaintiff's motion for default judgment inadequate where its pleading failed to demonstrate that the defendant was liable under the contract)). Before judgment can be entered, the court must determine whether the plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default. *Ibid.* In so doing, the court may exercise its discretion to "require some proof of the facts that must be established in order to determine liability." *Ibid.* (citation omitted). In determining damages not susceptible to simple mathematical calculation, a court has the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing and the moving party is entitled to all

reasonable inferences from the evidence it offers.  *See Action S.A.* v. *Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok* v. *Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Au Bon Pain Corp.*, at 65; FRCvP 55(b)(2).

Default judgments may be granted to plaintiffs asserting copyright infringement claims where the defendants have failed to answer or move against the complaint. *Broad. Music, Inc.* v. *R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996). As a tort action, an action for copyright infringement imposes joint and several liability on all participants of the tortious activity.  *Sygma Photo News, Inc.* v. *High Society Magazine, Inc.*, 596 F. Supp. 28, 33 (S.D.N.Y. 1984).  An individual may be liable for copyright infringement if he has the right and ability to supervise the infringing activity and a direct financial interest in such activity.  *Barnaby Music Corp.* v. *Catoctin Broad. Corp.*, 1988 U.S. Dist. LEXIS 15394, at *6-7 (W.D.N.Y. 1988).

Turning to the facts of this case, plaintiffs allege that defendants willfully infringed plaintiffs' copyrights in each composition by giving public performances of the compositions as part of the programs broadcast on WLVY-FM and that defendants threaten to continue such infringing performances despite knowledge of their violations of and responsibilities under copyright laws.  Plaintiffs allege that the performances were unauthorized — to wit, neither defendants, their agents or any performer was licensed by or otherwise received permission from plaintiffs to give such performances.  Plaintiffs claim that Pfuntner derived financial benefit from and was primarily responsible for the

control, management, operation and maintenance of Pembrook's affairs and the acts complained of were done under his direction and supervision and with his active approval and assistance.

Plaintiffs allege that, since April 15, 2003, WLVY-FM has not been licensed by ASCAP to perform any of the copyrighted musical works in the ASCAP repertory, including the six works at issue here.  From as early as 1977 to April 15, 2003, WLVY-FM operated under a license agreement with ASCAP.  WLVY-FM, however, consistently failed to meet its payment obligations under that agreement and its license was terminated.  Defendants have run other radio stations in New York, including WELM in Elmira, N.Y. and WACK in Newark, N.Y.  Prior to December 31, 1982 defendants held ASCAP license agreements for WELM and WACK.  Again, defendants failed to pay license fees as required by their license agreements and their licenses expired by their own terms with fees owing.  In 1983, after defendants refused to pay the fees they owed, ASCAP informed defendants that WELM and WACK would no longer be treated as licensed.   Despite being so informed, defendants continued to broadcast ASCAP members' music over WELM and WACK.  Hence, ASCAP commenced two lawsuits — *Bernstein* v. *Pembrook Pines Inc.*, 85-CV-0302T, and *Prophet Music, Inc.*, v. *Pembrook Pines, Inc.*, 87-CV-0253.  Both actions were settled in accordance with the terms of a consent judgment entered in February 1988, whereby defendants paid a judgment amount and executed new license agreements for the two stations.

ASCAP sent letters — dated August 23, 2002, September 16, 2002 and March 11, 2003 — informing defendants that the account balance for WLVY-FM was in substantial arrears and/or default and requesting payment of the overdue amount. Defendants continued to remain in default.  A formal notice was sent on March 11, 2003 of ASCAP's intent to terminate defendants' ASCAP license if all outstanding license fee payments were not received within thirty days.  On April 15, 2003, via letter, ASCAP terminated WLVY-FM's license for breach and default with $16,755.32 in fees owed and informed defendants that they no longer have permission to perform ASCAP's members' copyrighted musical compositions by broadcast over radio station WLVY-FM. Defendants, however, continued performing musical compositions for which they did not have licenses.  On May 29, 2003 ASCAP informed defendants, via letter, that it had obtained evidence of performances of its members' copyrighted songs broadcast over WLVY-FM.  ASCAP's letter offered to reinstate WLVY-FM's license upon the payment of license fees.  Defendants rejected ASCAP's offer and continued to broadcast ASCAP's members' works.  In addition to these letters, plaintiffs contacted defendants through telephone calls and personal visits to advise defendants of their responsibilities under the Copyright Act.  ASCAP estimates that, if properly licensed by ASCAP through August 25, 2004, WYVL-FM would owe $29,415 in license fees, subject to audit.  Based on these facts — which are supported by exhibits and affidavits and defendants' failure to plead —, the undersigned will grant plaintiffs' Motion for Default Judgment.

Defendants Pembrook and Pfuntner are jointly liable for the infringing performances. Pfuntner is alleged to have been involved in and supervised WLVY-FM's business activities — which include the performance of infringing musical works — and has derived direct financial benefit therefrom. Thus, Pfuntner is jointly liable with Pembrook for the infringements in this action.

The Copyright Act of 1976 provides that courts may grant injunctive relief to prevent or restrain copyright infringements. 17 U.S.C. §502(a).[4] A permanent injunction is appropriate when infringement by unauthorized public performances has been proven. *Broad. Music, Inc.* v. *Sonny Inv. Assoc., Inc.*, 865 F. Supp. 110, 114 (W.D.N.Y. 1994). The uncontroverted allegations in plaintiffs' Complaint, as supplemented by the affidavit of Hugo Del Bove, account manager in ASCAP's Broadcast Licensing Department, and the exhibits to their Motion for Default Judgment, establish that defendants infringed plaintiffs' copyrights despite knowledge of those copyrights and continue to have copyrighted music performed at WLVY-FM. Plaintiffs in this action are, in a sense, representative of all of ASCAP's members, and, as such, seek to enjoin defendants from performing any or all music in the ASCAP repertory without proper authorization. Plaintiffs therefore will be granted a permanent injunction against unauthorized public performances of any copyrighted compositions licensed

---

[4]17 U.S.C. §502(a) states, in pertinent part:
"Any court *** may *** grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

through ASCAP.   17 U.S.C. §502(a);   *R Bar of Manhattan*, at 659 (enjoining the defendants from performing any compositions licensed through Broadcast Music, Inc. ("BMI"), which had been granted the right to license the public performance rights in the eight musical compositions involved in the case).

Plaintiffs next request statutory damages in the amount of $15,000 for each musical work, totaling $90,000.   Plaintiffs request such an amount in order to deter defendants from deliberately infringing on copyrighted works and to avoid allowing defendants to be better off as willful infringers than they would have been had they been properly licensed.   The Copyright Act provides a copyright owner with the option of recovering (1) the copyright owner's actual damages and any additional profits of the infringer or (2) statutory damages, often referred to as "in lieu" damages, of between $500 and $20,000 per infringed work.   17 U.S.C. §§504(a), 504(c)(1).[5]   If the second option is chosen — as it is here —, the award of statutory damages may be increased up to a maximum of $150,000 if infringement was committed willfully.   17 U.S.C. §504(c)(2).[6]   Courts are given broad discretionary power to make an award of statutory

---

[5]17 U.S.C. §504(c)(1) states, in pertinent part:
"[T]he copyright owner may elect ∗∗∗ to recover, instead of actual damages and profits, in award of statutory damages for all infringements involved in the action, with respect to any one work, for which only one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just."

[6]17 U.S.C. §504(c)(2) states, in pertinent part:
"In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the
(continued...)

damages in order to serve the dual purposes of the Copyright Act — *viz.*, "to compensate copyright owners and to provide a deterrent for would-be infringers." *Lauratex Textile Corp.* v. *Allton Knitting Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981). Factors relevant in determining the amount of statutory damages include "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind." *Golden Torch Music Corp.* v. *Pier III Cafe, Inc.,* 684 F. Supp. 772, 774 (D.Conn.1988). In similar cases involving unlicensed public performances of copyrighted music, courts have held that, in order to put such infringers "on notice that it costs less to obey the copyright laws than to violate them," *Rodgers* v. *Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D.Pa.1985) (quotation omitted), a statutory damage award should significantly exceed the amount of unpaid license fees. *See, e.g., Broad. Music, Inc.* v. *Star Amusements, Inc.,* 44 F.3d 485, 488 (7th Cir.1995) (upholding award of $140,000 in statutory damages where defendants avoided paying about $75,000 in Copyright Office registration fees); *Chi-Boy Music* v. *Charlie Club, Inc.,* 930 F.2d 1224, 1227, 1229-30 (7th Cir.1991) (upholding an award of $40,000 in statutory damages that was approximately three times what ASCAP license fees would have been had defendant been licensed by ASCAP); *Sailor Music* v. *IML Corp.,* 867 F. Supp. 565, 570

---

[6](...continued)
award of statutory damages to a sum of not more than $150,000."

(E.D.Mich. 1994) (inferring from other cases a "de facto treble rule" according to which statutory damages should be "three times the amount of a properly purchased license for each infringement"); *Major Bob Music* v. *Stubbs,* 851 F. Supp. 475, 480-81 (S.D.Ga.1994) (awarding $6,000 in statutory damages — *i.e.,* approximately three times what ASCAP license fees would have been); *Broad. Music, Inc.* v. *Melody Fair Enter., Inc.,* 1990 U.S. Dist. LEXIS 19264, at *7 (W.D.N.Y. 1990) (awarding statutory damages of $42,000 and $70,000 where BMI license fees would have been $17,000); *Golden Torch Music Corp.* v. *Pier III Cafe, Inc.,* 684 F. Supp. 772, 774-75 (D.Conn. 1988) (awarding statutory damages of $8,000 where ASCAP license fees would have been $1,490); *Rodgers* v. *Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D.Pa. 1985) (awarding statutory damages of $122,500 where ASCAP license fees would have been $77,805).

The evidence shows that from August 23, 2002 to May 29, 2003 ASCAP representatives wrote to defendants on numerous occasions and made phone calls and personal visits to defendants in an effort to tell defendants the requirements of the Copyright Act and to convince them to obtain an ASCAP license.  On the basis of the record, it is clear that defendants have acted willfully and "recklessly disregarded" their obligations under the Copyright Act.   *R Bar of Manhattan*, at 660 (finding that the defendants acted willfully and with reckless disregard of their obligations under the Copyright Act after ignoring the plaintiff's several letters informing them of their

- 12 -

infringing behavior).   The evidence submitted shows that defendants owe plaintiffs $16,755.32 in fees pursuant to their license agreement and that defendants would have paid plaintiffs approximately $29,415 in total license fees had they been properly licensed for the period from April 15, 2003 to August 25, 2004.   Plaintiffs request $15,000 for each of the six songs in suit, totaling $90,000.   That sum is almost exactly three times what ASCAP license fees would have been, and, as such, is an appropriate statutory damages amount — to wit, that multiple of license fees is high enough to deter others from calculating that it would be cheaper to violate the copyright laws than to obtain an appropriate license and is within the range of statutory damage awards in similar cases.

Plaintiffs request and the Copyright Act authorizes recovery of costs and "a reasonable attorney's fee to the prevailing party as part of the costs," to be determined in the court's discretion.   17 U.S.C. §505.   In exercising its equitable discretion, the court may consider, among other things, "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."   *Fogerty* v. *Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994).   Considerations of deterrence support an award of attorney's fees to the prevailing party where, as here, none of the factors that might justify denying such an award — *viz.,* the presence of complex or novel issues, a

defendant's innocent state of mind or prosecution of the case in bad faith — is present. *R Bar of Manhattan*, at 661.

Plaintiffs have submitted the affidavit of their attorney, Michael J. Sciotti, Esq. setting forth his work and the work of others in his firm on this matter as well as plaintiffs' costs in connection with this action.  They have requested $2,790.00 for Mr. Sciotti's work based on an hourly rate of $225.00, $3,050.00 for paralegal work done by Carolyn A. Clifford based on an hourly rate of $132.51 and $1,920.50 for Brent J. Horton, Esq.'s work based on an hourly rate of $115.00.  Plaintiffs have also submitted a sufficiently detailed attorney billing report specifying the work that was performed on this litigation, the date it was performed, the amount of time expended on each task and the billing rate of and person performing each task.  Plaintiffs request recovery of $150.00 for the filing fee and $326.23 incurred during service of process in addition to $7,760.50 in attorney's fees.

Where prevailing parties are entitled to reasonable attorney's fees, the hourly rates charged must "fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation ." *Myree* v. *Local 41, Int'l Bhd. of Elec. Workers,* 847 F. Supp. 1059, 1065 (W.D.N.Y.); *see also Blum* v. *Stenson,* 465 U.S. 886, 895 (1984) (finding that courts may consider the "prevailing market rates" in the relevant community to assist in the determination of an appropriate hourly rate); see generally *In re Continental Ill. Sec. Litig.,* 962 F.2d

566, 568 (7th Cir.1992) (holding that the district court is to "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). The "relevant community" for attorney's fees purposes is the district in which the Court sits, in this case the Western District of New York. *Haungs* v. *Runyon*, 2000 U.S. Dist. LEXIS 12396, at *3-4 (W.D.N.Y. 2000). In this district, the billing rates for associates generally range between $110 and $205 per hour and for partners generally range between $200 and $240 per hour. *See Ibid.* Therefore, plaintiffs' costs of $476.23 and attorney's fees of $7,760.50 are reasonable and thus will be awarded.

Accordingly, it is hereby **ORDERED** that plaintiffs' Motion for Default Judgment is granted, that defendants pay statutory damages totaling $90,000 to plaintiffs, that defendants pay costs and attorney's fees totaling $8,236.73 to plaintiffs and that the Clerk of the Court shall close this case.

DATED:      Buffalo, N.Y.

July 1, 2005

_____
        /s/ John T. Elfvin
        JOHN T. ELFVIN
        S.U.S.D.J.